UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| ANTHONY W. HYBARGER<br>(Social Security No. XXX-XX-4549),<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 3:10-cv-92-WGH-RLY |

**MEMORANDUM DECISION AND ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 8, 12) and an Order of Reference entered by Chief Judge Richard L. Young on February 8, 2011 (Docket No. 19).

**I. Statement of the Case**

Plaintiff, Anthony W. Hybarger, seeks judicial review of the final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB on May 27, 2006, alleging disability since December 4, 2005. (R. 91-93). The agency denied Plaintiff's application both initially and on reconsideration. (R. 53-56, 68-70). Plaintiff appeared and

testified at a hearing before Administrative Law Judge George Jacobs ("ALJ") on November 19, 2008. (R. 22-50). Plaintiff was represented by an attorney; also testifying was a vocational expert. (R. 22). On March 12, 2009, the ALJ issued his opinion finding that Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform a significant number of jobs in the economy. (R. 10-18). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 1-3). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on June 16, 2010, seeking judicial review of the ALJ's decision.

## II. Statement of the Facts

### A. Vocational Profile

Born on December 9, 1965, Plaintiff was 43 years old at the time of the ALJ's decision, with a high school education. (R. 16). His past relevant work experience included a job as a carpet layer/helper, van driver/helper, delivery man, asphalt plant worker, landscape laborer, mixer operator, and maintenance worker. (R. 46-47).

### B. Medical Evidence

#### 1. Plaintiff's Impairment's

**Physical Impairments:**

On September 22, 2004, Pedro Dominguez, Jr., M.D., saw Plaintiff for complaints of constant pain in his neck. (R. 232-33). Plaintiff had previously been diagnosed with disc herniation at C5-6. (R. 232). On exam, Plaintiff had

quite restricted range of motion in his neck, as well as pain upon extension and rotation of his neck. Dr. Dominguez recommended an MRI. (R. 232).

On October 27, 2004, Dr. Dominguez reviewed a recent MRI which showed degenerative changes had progressed compared to prior scans. Dr. Dominguez found C5-6 left paracentral mixed protrusion with mild cord compression, and nerve root impingement. (R. 235-36). Plaintiff indicated a desire to proceed with surgery. Subsequently, on October 29, 2004, an anterior cervical disc excision and fusion at the C5-6 level was performed. (R. 237-39).

By December 7, 2004, Plaintiff was "doing very well" after his surgery. (R. 240). Dr. Dominguez indicated that because of the amount of heavy lifting required at Plaintiff's job, he would not release Plaintiff back to work until January 3, 2005. Dr. Dominguez further indicated that Plaintiff's X-rays revealed excellent positioning of the fusion. (R. 240).

On March 11, 2005, Plaintiff reported to his treating physician, Gerald Rightmyer, M.D., that his neck pain was "doing much better." (R. 217).

On May 17, 2005, Plaintiff saw Dr. Dominguez with complaints of pain in the lower cervical region. (R. 243). He indicated that he was working longer hours and that his pain was worse with exertion. He had no arm symptoms or radicular pain. Plaintiff's range of motion was essentially okay. Dr. Dominguez opined that Plaintiff's work activities were contributing to his pain. (R. 243). A May 27, 2005 CT scan of Plaintiff's cervical spine showed the prior fusion at C5-6 and excellent alignment. (R. 188).

X-rays on August 25, 2005, revealed fusion at C5-6, satisfactory alignment, and prevertebral soft tissues within normal limits. (R. 187).

An MRI of Plaintiff's spine from September 2, 2005, showed the prior fusion at C5-6, along with nominal protrusions at C2-3, C3-4, and a small protrusion at T1-2 with mild sac effacement and no cord displacement or compression. (R. 186).

On March 10, 2006, Plaintiff saw Dr. Rightmyer with complaints of chronic neck pain; he continued to take narcotic medications for relief. (R. 215).

On May 18, 2006, Plaintiff reported to Dr. Rightmyer that he had pain in almost all joints, including his wrists, elbows, shoulders, knees, as well as his back and neck. Dr. Rightmyer prescribed medication and referred Plaintiff to a rheumatologist. (R. 214).

Plaintiff visited Dr. Rightmyer on June 19, 2006, and indicated that his arthritis was feeling better on medication, but he was having some trouble sleeping. (R. 213).

**Mental Impairments:**

On July 26, 2005, Plaintiff visited Dr. Rightmyer with complaints of anxiety and depression. He indicated that after his neck surgery, he was terminated from his job at a feed mill (working 15 hours a day) because he could not handle the long hours, but he had gotten another job. (R. 217).

On August 17, 2005, Plaintiff saw Dr. Rightmyer and reported high anxiety levels and indicated that he had been terminated from his job because he had missed several days of work. (R. 216).

Plaintiff had a mental status evaluation performed by William Weiss, Ph.D., on September 28, 2006. (R. 258-64). Plaintiff reported "a lot of emotional problems," including not being able to go out into crowds and panic attacks. (R. 258). He reported an overnight stay in a psychiatric care facility in 2000. (R. 258). However, he reported that he was presently not seeing a counselor, psychiatrist, or psychologist, and he had not seen one since 2000. (R. 258-59). Plaintiff indicated that Dr. Rightmyer had diagnosed depression and placed Plaintiff on antidepressants. (R. 259). Plaintiff reported having a driver's license but being too nervous to drive. Plaintiff reported smoking marijuana and drinking on occasion. (R. 259). Plaintiff reported that his daily activities included occasionally cooking, cleaning, doing the laundry, washing dishes, mowing the lawn, and going fishing. (R. 262). Dr. Weiss found that Plaintiff exhibited signs of panic disorder with agoraphobia, as well as depression. (R. 262). He assigned a Global Assessment of Functioning score of 50 current/60 highest in the previous year. (R. 263). Dr. Weiss opined that Plaintiff could benefit from psychiatric intervention or psychotherapy. He further opined that Plaintiff was somewhat impaired in his ability to understand, retain, and follow directions; his ability to sustain attention to perform simple repetitive tasks; and his ability to relate to others. Plaintiff was also impaired in his ability to tolerate the stress and pressures of day-to-day work. (R. 263).

On December 20, 2006, Plaintiff complained to Dr. Rightmyer of mainly anxiety symptoms and some depression. (R. 295).

### 2. State Agency Review

State agency psychologist Mary Thompson, Ph.D., performed a Psychiatric Review Technique and reviewed the medical records on October 23, 2006, and opined that there was insufficient evidence to determine whether Plaintiff had a medically determinable mental impairment. (R. 273-85). On February 1, 2007, Dan Vandivier, Ph.D., concurred with the previous assessment. (R. 302-14).

State agency physician Victor Pinkelton, M.D., also reviewed all the medical evidence on October 26, 2006, and opined that Plaintiff could perform medium exertion work with no postural/manipulative limitations. (R. 265-72). This assessment was affirmed by Diosdado Irlandez, M.D., on February 1, 2007. (R. 318-25).

### III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus,

even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV. Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ concluded that Plaintiff was insured for DIB through December 31, 2006; Plaintiff also had not engaged in substantial gainful activity since the alleged onset date. (R. 12). The ALJ found that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had six impairments that are classified as severe: degenerative disc disease of the cervical spine; obesity; panic disorder with agoraphobia; depression; anxiety; and bipolar disorder. (R. 12). The ALJ concluded that these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13). Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of his limitations were not fully credible. (R. 15-16). Consequently, the ALJ concluded that Plaintiff retained the RFC for sedentary work except that he could perform no overhead reaching; no climbing ladders/ropes/scaffolds; he could only occasionally perform other postural activities; he is limited to simple repetitive tasks and occasional contact with supervisors/co-workers, but no contact with the public. (R. 14). The ALJ opined that Plaintiff did not retain the RFC to perform his past work. (R. 16). However, Plaintiff could perform a substantial number of jobs in the regional economy, including 1,200 production worker jobs, 780 general office worker jobs, and 245 inspector jobs. (R. 17). The ALJ concluded by finding that Plaintiff was not under a disability. (R. 17).

## VI.  Issues

Plaintiff has raised two issues. The issues are as follows:

1. Whether the opinions of Dr. Weiss and Dr. Rightmyer were entitled to controlling weight.

2. Whether the ALJ's credibility determination was patently wrong.

**Issue 1: Whether the opinions of Dr. Weiss and Dr. Rightmyer were entitled to controlling weight.**

Plaintiff's first argument is that the ALJ did not give proper weight to the opinions of Dr. Rightmyer and Dr. Weiss. Dr. Rightmyer's opinions are that of a "treating physician," while Dr. Weiss's opinion is that of a "consulting physician." 20 C.F.R. § 404.1527 provides guidance for how the opinions of treating and nontreating sources are to be evaluated and explains as follows:

> (d) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> > (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> >
> > (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your

case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because

> nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> (6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 404.1527.

In this case, the ALJ's failure to give controlling weight to the opinions of Dr. Rightmyer and Dr. Weiss is supported by the record. First, as to Dr. Rightmyer, the opinion that Plaintiff argues should be afforded controlling weight was rendered in November 2008, nearly two years after Plaintiff's insured status expired on December 31, 2006, and it, therefore, will not be considered by the

court.[1]  (R. 361-63). As for Dr. Rightmyer's opinions pertaining to the relevant time period (December 2005, when Plaintiff alleges his disability began, to December 31, 2006, when he ceased to be insured for DIB), the court notes that Dr. Dominguez released Plaintiff back to work after his neck surgery in January 2005.  (R. 240).  Dr. Rightmyer reported that Plaintiff's neck pain was "doing much better" in March 2005.  (R. 217).  Objective medical testing revealed essentially normal results in May 2005.  (R. 243).  In May 2006, Plaintiff reported pain in nearly every joint in his body (R. 214), but there was absolutely no objective medical evidence to support this.  And, by June 2006, Plaintiff reported that his arthritis was better on medication.  (R. 213).  Most notably, on December 20, 2006, just eleven days before his insured status expired, Plaintiff saw Dr. Rightmyer and made no mention of arthritic or neck pain, and Dr. Rightmyer made no mention of objective medical evidence of such impairments. (R. 295).  In summary, the objective medical evidence of record does not support Dr. Rightmyer's belated opinions that Plaintiff suffered from disabling pain. Consequently, the ALJ was free to reject Dr. Rightmyer's opinions.

As for the opinions of Dr. Weiss, as he was not a treating physician, his opinions were not entitled to controlling weight.  Nevertheless, the ALJ adequately accounted for the mental impairments that Dr. Weiss found during

---

[1] The court notes that none of the opinions rendered by Dr. Rightmyer from November 2008 have any bearing on Plaintiff's condition in December 2006.  The court cannot rely on medical evidence obtained after Plaintiff's insured status expired, unless it somehow relates to Plaintiff's condition prior to the expiration of his insured status.  Since Plaintiff has provided no indication whatsoever that any of the medical evidence provided after December 31, 2006, relates to Plaintiff's condition prior to that date, it will not be considered.

his examination of Plaintiff. Dr. Weiss opined that Plaintiff was somewhat impaired in his ability to understand, retain, and follow directions; his ability to sustain attention to perform simple repetitive tasks; and his ability to relate to others. Plaintiff was also impaired in his ability to tolerate the stress and pressures of day-to-day work. (R. 263). However, state agency psychologists reviewed Plaintiff's records and opined that there was no evidence of a mental impairment. (R. 273-85, 302-14). The ALJ examined the opinions of Dr. Weiss, as well as the other objective medical evidence in the record, and reasonably concluded that Plaintiff could still perform simple repetitive tasks with occasional contact with supervisors/co-workers, but no contact with the public. These limitations accounted for Dr. Weiss's opinions. Plaintiff argues that Dr. Weiss's opinion that Plaintiff was impaired in his ability to tolerate the stress of work meant that Plaintiff could not perform *any* substantial gainful activity. However, the Court concludes that Dr. Weiss's opinion regarding stress did not disqualify Plaintiff from all work, and the limitations imposed by the ALJ adequately accounted for Plaintiff's mental impairments.

**Issue 2:      Whether the ALJ's credibility determination was patently wrong.**

Plaintiff also argues that the ALJ's credibility determination was flawed. The ALJ's credibility determination was as follows:

> The claimant testified that he is unable to work primarily because of his neck and mental capacity. He stated that his neck hurts 90 percent of the time and that most of the time it is a 6 on a scale of 0-10 in which 10 is the worst pain imaginable. The claimant stated that this pain is aggravated whenever he attempts to do anything such as laundry and dishes. He also stated that extending his arms in front of him causes pain in his neck and arms. He reported the

pain is alleviated at least somewhat when he gets off of his feet, lies down and uses a heating pad. In terms of his physical capabilities the claimant stated that he could stand or walk 1 hour out of 8 hours and sit for 1 hour out of 8 hours. He also testified that he could comfortably lift 10-15 pounds. In regard to his mental status the claimant testified he has panic attacks at least two times a week that last for 30 minutes at a time. As previously indicated he also testified he has difficulties with concentration and limited social contact. The claimant also testified that he worries so much he has crying spells and goes 2-3 days at a time without sleeping. He stated this occurs a couple of times each month.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The medical and other evidence for the time period through the claimant's date last insured of December 31, 2006 does not entirely support the claimant's allegations. The claimant did suffer from a herniated cervical disc for which he underwent surgery in late October 2004. In May 2006 he did complain to Dr. Rightmyer of pain in practically all the joints of his body and his back and lower neck. Dr. Rightmyer prescribed Naprosyn for the claimant's pain and one month later the claimant reported he was feeling better on the Naprosyn (Exhibit 2F 3 and 4). It is also significant to note that the claimant saw Dr. Rightmyer on three occasions in November and December 2006 but did not complain of neck or back pain on any of those occasions (Exhibit 10F 4, 5 and 6). Dr. Weiss, who saw the claimant on September 28, 2006, noted the claimant lived in a house with his wife and three children. He also noted the claimant did some dishwashing, sweeping and laundry. He further noted the claimant fished sometimes. On the mental status examination Dr. Weiss found the claimant's recent memory, remote memory, abstract thinking and proverb interpretation were all very good (Exhibit 5F). The aforementioned medical findings together with the claimant's activities of daily living all indicate the claimant does not suffer the degree of pain to which he testified and that he is mentally capable of far greater work activity than to which he testified.

(R. 15-16). An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However,

the ALJ's "credibility" decision in this case is not only an analysis of Plaintiff's credibility, but also an evaluation of Plaintiff's complaints of pain. Therefore, the ALJ must consider SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues, as well as 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.* This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected

> in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

SSR 96-7p (emphasis added; footnote omitted). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, while the ALJ did not conduct a perfect credibility determination, Plaintiff has failed to demonstrate that the assessment was "patently wrong." Although he did not systematically go through the list of factors in Section 404.1529, the ALJ still hit on each major portion of the requisite credibility analysis. The ALJ noted the conservative nature of the treatment during the time frame at issue in this case. Specifically, the court notes that, from December 2005 to December 2006, the evidence reveals that Plaintiff was taking Naprosyn for his pain and that it appeared to be working. In fact, as the ALJ rightfully pointed out, on several occasions during the relevant time period, Plaintiff saw Dr. Rightmyer and never even complained of pain. Additionally, Plaintiff was engaged in no other modalities of treatment for his alleged pain during this time. This despite the fact that in May 2006, Dr. Rightmyer referred Plaintiff to a rheumatologist. (R. 214). Finally, the ALJ correctly noted that Plaintiff's report of daily activities did not match his allegations at the hearing before the ALJ. For instance, Plaintiff reported at his hearing in November 2008 that extending his arms in front of him caused pain in his neck and arms. However, in September 2006, only three months before his insured status expired, Plaintiff reported to Dr. Weiss that he enjoyed to fish, an activity that certainly involves a significant amount of extension of one's arms. Plaintiff also reported to Dr. Weiss that he cooked, cleaned, did laundry, did the dishes, and mowed the law. These activities, along with the objective medical evidence, taken as a whole are inconsistent with Plaintiff's allegations of disabling pain. While it may very well be the case that Plaintiff's condition had substantially

worsened by the time of his hearing before the ALJ, he was no longer insured for DIB as of December 31, 2006, and the ALJ, therefore, conducted a thorough and appropriate credibility determination. The ALJ's decision finding Plaintiff not entirely credible is affirmed.

## VII.  Conclusion

The ALJ's treatment of the opinions of Dr. Rightmyer and Dr. Weiss was proper. Additionally, the ALJ conducted a proper assessment of Plaintiff's credibility. The final decision of the Commissioner is, therefore, **AFFIRMED.**

**SO ORDERED** the 23rd day of February, 2011.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

John Ryan Worman
WOODS & WOODS, LLP
jworman@woodslawyers.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov